FILED

2004 FEB -4  A 11: 48

UNITED STATES DISTRICT COURT US
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA FLORES | : | |
| Plaintiff, | : | CIV. NO. 3:02CV01970 (WWE) |
| vs. | : | |
| OFFICER MARK STRAUBEL AND OFFICER RAYMOND LONG | : | |
| Defendants | : | FEBRUARY 3, 2004 |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

#### Introduction

This action was filed by Maria Flores by a complaint dated November 8, 2002. Ms. Flores has named two Bridgeport police officers as Defendants in this action. They are Mark Straubel and Raymond Long. Officers Straubel and Long were the officers who arrested Ms. Flores on November 20, 1999. They alleged her actions in regard to her operation of a motor vehicle, as well as her response to the police detention, were reckless and interfered with the officers' ability to perform their job. After a significant struggle, Ms. Flores was arrested and charged with Risk of Injury to a Minor, Interfering with an Officer, Criminal Attempt, Assault on a Police Officer, Reckless Driving, Unsafe Movement from a Stopped Position, and Failure to Wear a Seat Belt (Exhibit "A" – Incident Report of November 20, 1999).

BMF04003

1

The Plaintiff alleges that the police officers falsely arrested her and used unreasonable and excessive force during her arrest. The Plaintiff also alleges that the Defendants deprived her of equal protection of the law and the right to be free from an unreasonable seizure.

Lastly, the Plaintiff claims that under Connecticut law, the Defendants are liable for assault and battery, intentional infliction of emotional distress, and negligence.

The Defendants have denied the Plaintiff's claims and set forth affirmative defenses, including immunity from liability under state and federal law based upon the actions performed by them in the course of their duties as police officers.

**Facts**

On November 20, 1999, Officers Straubel and Long were assigned to the Marina Village Housing Complex and the surrounding area for patrol duties. They were dressed in Bridgeport police uniforms and drove a marked police car. They had been assigned to the area for a number of months and were familiar with the fact that it was a high crime area involving narcotics and weapons (Exhibit "B" – Deposition Testimony of Mark Straubel at pages 19-20). Ms. Flores, who lives in the area, testified that it is really a hot area for drugs and there are a lot of drugs that are sold and a lot of bad activity in the area. (Exhibit "C" – Deposition Testimony of Flores at pages 73-74). As they were patrolling, their attention was drawn to a gold

color Crown Victoria that had pulled away from the market on Columbia Street in such a reckless manner that the tires were caused to spin and squeal and it stopped shortly before hitting the car they were riding (Exhibit "D" – Deposition Testimony of Straubel at page 17).

The officers did not recognize the car nor the driver and put a spotlight on the car so as to see the driver's hands (Exhibit "E" - Deposition Testimony of Straubel at page 20).  Immediately upon approaching the drivers side, the operator began to use profanity.  In fact, when the officer approached the window, Ms. Flores responded to their presence with:  "What?  Are you going to fucking harass me?" (Exhibit "F" - Deposition Testimony of Flores at pages 64-65).  The only response of the officer was to request a license and registration.

Officer Straubel requested the paperwork to get some information from the driver to enable him to investigate what he thought was suspicious activity.  As Officer Straubel reviewed the paperwork, the Plaintiff began to use additional profanity and then rolled up her window and reaching as if she was about to lock the door (Exhibit "G" - Deposition Testimony of Mark Straubel at pages 23 and 42).  As a result of her actions, Officer Straubel opened the door and reached in to take the keys from the ignition. He was confronted with profanity and aggressive, assaultive behavior from Flores (Exhibit "H" - Deposition Testimony of Mark Straubel at pages 23 and 28).  Straubel removed Ms. Flores from the car and, only after getting

assistance from Officer Long, was he able to handcuff her. During the course of the struggle to handcuff her, OC spray was used when Ms. Flores was out of the car. After the struggle and after Ms. Flores was placed in the back seat of the police car, the officers noted a little blood over her ear. She was immediately transported to the hospital by the officers.

Ms. Flores was treated, released and brought to the Booking area where she was charged with a number of violations of the Connecticut criminal statutes, including risk of injury to a minor, interfering with a police officer, attempted assault on a police officer, and motor vehicle violations. On or about June 13, 2000 the criminal actions were nolled after Ms. Flores paid a fee of $150.00 to the court (Exhibit "I" – Deposition Testimony of Flores at page 161.

The Defendant police officers have contended that they had probable cause for her arrest and they utilized reasonable force to subdue and effectuate the arrest of Ms. Flores. Additionally, the Defendant officers contend they are entitled to qualified immunity for their actions.

## Argument

### A.    Summary Judgment Standard

A Motion for Summary Judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In

determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inference against the moving party. <u>Anderson v. Liberty</u>, 477 U.S. 242, 255 (1986). In this regard, to determine what is a genuine dispute, the non-moving party must do more than simply show that there is some metaphysical doubt as to material facts.    Mere speculation or conjecture are not sufficient nor will reliance on unsupported assertions. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); <u>Western World Ins. Co. v. Stack Oil Co.</u>, 922 F.2d 118, 121 (2nd Cir. 1990). The non-moving party must provide "concrete evidence from which a reasonable juror could return a verdict in his favor." <u>Anderson</u>, supra at 256; <u>Western World</u>, supra and <u>Goenaga v. March of Dimes Birth Defects, Found</u>, 51 F.3d 14 (2nd Cir. 1995).

## B.    Plaintiff's Claim Of False Arrest Is Not Supported By The Facts Or Law

The Plaintiff contends that the arrest by these officers amounted to a false arrest and "were without a warrant and wholly without probable cause (Plaintiff's Complaint, Paragraph 15). She states that the officers prepared a false police report for her arrest. However, the facts, even if viewed in Plaintiff's favor, and the law supports the arrest of Ms. Flores.

The false arrest claim must fail because the evidence and testimony clearly indicate that the officers had probable cause for the arrest. Thereafter, as argued below, the Court can easily determine that, given the actions of the Plaintiff and the

background they are, in the alternative, entitled to qualified immunity for their actions in stopping and, thereafter, arresting Ms. Flores.[1]

Probable cause to arrest exists when the "authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Golino v. City of New Haven, 950 F.2d 864, 870 (2nd Cir. 1991). The presence of probable cause is a function of "probabilities, not certitude as viewed by a reasonably prudent law enforcement official considering all the objective facts known prior to effectuating the arrest." Carson v. Lewis, 35 F. Supp. 2nd 250, 257 (ED N.Y. 1999). Ultimate dismissal of a charge against an arrestee does not indicate that the arrest was made without probable cause. Martin v. Rodriguez, 154 F. Supp. 2nd 306, 312 (D. Conn. 2001). However, in the instant action the Plaintiff testified in her deposition that she did not receive a complete dismissal of her charges. She, in fact, stated that the court imposed a "$50.00 fine on each count and then they waived the cost of the fees for a total of $150.00" (Exhibit "I" – Deposition Testimony of Flores at page 161). Flores confirmed this fact when counsel said "So you paid $150.00 to the court for the arrest and charges on this

---

[1] Even if the Plaintiff had not confronted the officers, the facts surrounding her arrest for the risk of injury and other offenses are supported by the description of the events of all parties and witnesses (i.e., Stephanie Norling

case, isn't that true?  A. Yes."  This fact alone should preclude the finding of a civil

rights violation for false arrest because it was obviously not favorable when she paid

$150.00 only upon order of the court.

There can be no federal civil rights claim for false arrest where the officer had

probable cause. Soares v. Connecticut, 8 F.3d 917 (2nd Cir. 1993);  Singer v. Fulton

County Sheriff, 63 F.3d 110 (2nd Cir. 1995);  Kent v. Kent, 312 F.3d 568 (2nd Cir.

2002).  Thus, a finding of probable cause is a complete defense to an action for false

arrest.  Bernard v. United States, 25 F.3d 98, 102 (2nd Cir. 1994).  In addition to the

fine paid by the Plaintiff, in determining whether the police officer had probable

cause to make an arrest, courts examine the totality of the circumstances.  Bernard

at 102.  If there are no material facts in dispute as to the pertinent events and the

knowledge of the officers, the question of probable cause may be determined as a

matter of law. Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996).

In the instant action, the Plaintiff admits that she, in fact, left skid marks at the

scene because she went back to see the scene (Exhibit "J" – Statement to OIA by

Flores at page 4).  She also testified that she is familiar with the area and it is a hot

area for drugs (Exhibit "C" – Deposition Testimony of Flores at pages 73-74).

The officers first saw the unfamiliar car in front of the market pull out so

recklessly that it actually skidded and came to rest in a position almost hitting the

police car (Exhibit "D" – Deposition Testimony of Straubel at page 17).  This activity

caused the officers to look more closely at the car and occupants because Straubel was concerned about weapons. From the very first approach of Straubel, Ms. Flores expressed an attitude that should have put him on alert. She started the conversation with "Are you going to fucking harass me?" (Exhibit "F" - Deposition Testimony of Flores at page 65). She followed this with an attempt to raise the car window and thereafter reach as if attempting to lock the door to the car (Exhibit "G" – Deposition Testimony of Straubel at pages 42-43). Thereafter, she resisted the handcuffs and continued her aggressive attitude by kicking the cage and spitting when placed in the police car (Exhibit "K" – Deposition Testimony of Straubel at page 50) Given the scenario, these officers properly acted and charged the Plaintiff with criminal violations which included the risk of injury to her minor child in the car and interfering with a police officer, as well as the assault on a police officer during the struggle to not only handcuff Ms. Flores, but place her in the back of the police car while she kicked and spit at the officers (Exhibit "L" – Deposition Testimony of Straubel at pages 29-31 and 50).

**Based upon the facts, the Court can find the Defendants are entitled to qualified immunity.**

In the alternative, the Court can determine, based upon the facts, testimony and evidence before it, that the officers have qualified immunity for their actions.

A police officer is entitled to qualified immunity shielding him from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2nd Cir. 1997) (citing Golino v. City of New Haven, 950 F.2d 864, 870 (2nd Cir. 1991). The defense of qualified immunity is based upon the objective reasonableness of an officer's actions. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Cartier v. Lussier, 955 F.3d 841 (2nd Cir. 1992). The test is not whether probable cause existed, but the test is whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997).

The test is an objective reasonableness standard which gives ample room for mistaken judgments so as not to deter an officer from making an arrest when he believes in the existence of probable cause. Malley v. Briggs, 475 U.S. 335 (1986).

In the instant action, the officers witnessed the operation of a motor vehicle that was so reckless that it drew their immediate attention. The driver, who sped off at a high rate of speed, left skid marks in the roadway-sidewalk area as well as coming to a stop in a position which could have endangered the officers or others.

The car was about 50 percent on the opposite side of the roadway where the police car was traveling (Exhibit "M" – Deposition Testimony of Straubel at page 18). Officer Straubel indicated that Marina Village was an area where "It's subject to a high amount of criminal activity." (Exhibit "N" – Deposition Testimony of Straubel at page 13).  The area is subject to crimes of narcotics, assaults and weapon violations (Exhibit "B" – Deposition Testimony of Straubel at page 19-20).  Officers Straubel then stated that the reckless charge was because she had a minor in the car when driving and failing to obey the officers' commands.  Additionally, she failed to follow the verbal commands and began resisting the officer's efforts to then remove her from the car after he saw her not only put the window up but begin to reach for the door as if attempting to lock the door (Exhibit "O" – Deposition Testimony of Straubel at page 23).  This perception to Officer Straubel at the time certainly changed his approach.  His attempts to then neutralize the situation and being met by resistance was a situation meriting arrest and the use of force.

Given the scenario, the arrest was proper and supported a finding of probable cause.

## C.    Excessive Force Was Not Utilized In This Situation

The Plaintiff contends that the Defendants violated her constitutional right to be free from the use of excessive force.  All claims that a law enforcement officer used excessive force in the course of an arrest, investigatory stop or other "seizure"

of a free citizen should be analyzed under the Fourth Amendment "reasonableness standard." Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, in reviewing the claim, the court recognizes that a police officer is entitled to use such force as is reasonable in light of the circumstances and dangers facing the officer at the time of the encounter with a citizen. Id. at 396.

The Fourth Amendment does not prohibit any use of physical force, rather, it prohibits the unreasonable use of physical force when making a "seizure." Tennessee v. Garner, 105 S. Ct. 471 (1985). In Garner, the Supreme Court recognized that the "reasonableness" of a seizure for the purposes of an analysis under the Fourth Amendment would depend upon the nature and quality of the intrusion on the individual's Fourth Amendment interests alleged to justify the intrusion. Id. This analysis was followed by the Supreme Court in Graham v. Connor, 109 S. Ct. 1989). In Graham, the court established an objective reasonableness analysis when assessing whether the force used was reasonable or not. The court recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Id. at 1871-1872. The court set forth a method of applying a balancing test; that is, to look at each case and consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others and whether the individual's actively resisting arrest or attempting to evade

arrest by flight.  In this context, the court in <u>Graham</u> has recognized that not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, is excessive.  <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973).

In the instant action, the Defendant, Straubel, physically removed Ms. Flores from her car only after she attempted to raise the window of her car while the Defendant officer was reviewing her vehicle information.

At the time Officer Straubel was assigned to patrol this area it had significant crime involving narcotics, assaults and weapons violations (Exhibit "N" – Deposition Testimony of Straubel at page 13).  As a result of his concern, he put a spotlight on the drive so as to see her hands (Exhibit "B" – Deposition Testimony of Straubel at page 19).  Straubel was concerned that she may have a weapon in the vehicle (Exhibit "P" – Deposition Testimony of Straubel at page 24).  After she ignored his commands, Officer Straubel confronted her.  He removed her with his hands only and, while doing so, she resisted him and ignored his verbal commands to get out of the vehicle (Exhibit "P" – Deposition Testimony of Straubel at page 46).  Officer Straubel stated he used force to put her in a prone position while she was resisting and tried to put handcuffs on her (Exhibit "R" – Deposition Testimony of Straubel at page 25).  Straubel testified he did not have a PR-24 and did not draw his gun (Exhibit "S" – Deposition Testimony of Straubel at pages 32 and 33).  Ms. Flores also testified that neither police officer removed their guns or had a flashlight in their

hands and that neither went back to the police car during the confrontation (Exhibit "T" – Deposition Testimony of Flores at page 117). In fact, she did not actually see any object but says she remembers something black (Exhibit "U" – Deposition Testimony of Flores at page 118). However, she is only guessing because she stated that as she sat in the deposition she just didn't know what, if anything, they may have had (Exhibit "V" – Deposition Testimony of Flores at page 122). The responses of Ms. Flores were no more than a guess.

Immediately after the confrontation, the officers took Ms. Flores to the hospital for a cut they saw on her head. The officers did not know how or when she received the cut (Exhibit "W" – Deposition Testimony of Straubel at page 34). The hospital report also indicated that she had a laceration to the head from an "unknown object" (Exhibit "X" – Hospital Report). Also, contrary to her testimony, the hospital report talks about a gun or nightstick. However, in her deposition, Flores states: "I don't know if it was a gun or a nightstick." (Exhibit "Y" – Deposition Testimony of Flores at page 120). She states it was "a black object." There is nothing but conjecture and surmise that the officers took any type of weapon to strike her. Given the uncertainty and the minor nature of her injuries, it is more probable that she was cut during the altercation. Given that she was struggling with the officer to such a degree that Officer Long felt it necessary to use OC spray, it appears in reviewing the injuries, the force was reasonable.

BMF04003

13

hands and that neither went back to the police car during the confrontation (Exhibit "T" – Deposition Testimony of Straubel at page 117). In fact, she did not actually see any object but says she remembers something black (Exhibit "U" – Deposition Testimony of Flores at page 118). However, she is only guessing because she stated that as she sat in the deposition she just didn't know what, if anything, they may have had (Exhibit "V" – Deposition Testimony of Flores at page 122). The responses of Ms. Flores were no more than a guess.

Immediately after the confrontation, the officers took Ms. Flores to the hospital for a cut they saw on her head. The officers did not know how or when she received the cut (Exhibit "W" – Deposition Testimony of Straubel at page 34). The hospital report also indicated that she had a laceration to the head from an "unknown object" (Exhibit "X" – Hospital Report). Also, contrary to her testimony, the hospital report talks about a gun or nightstick. However, in her deposition, Flores states: "I don't know if it was a gun or a nightstick." (Exhibit "Y" – Deposition Testimony of Flores at page 120). She states it was "a black object." There is nothing but conjecture and surmise that the officers took any type of weapon to strike her. Given the uncertainty and the minor nature of her injuries, it is more probable that she was cut during the altercation. Given that she was struggling with the officer to such a degree that Officer Long felt it necessary to use OC spray, it appears in reviewing the injuries, the force was reasonable.

BMF04003

13

**D.    The Officers Have Qualified Immunity For The Plaintiff's Claim Of Excessive Force**

If the Court should determine that the officers' actions and the statements of the Plaintiff make it difficult to grant summary judgment based upon the <u>Graham</u> analysis, the Court should determine that the officers in this case should be free of liability based upon qualified immunity.  In particular, the courts have determined qualified immunity is available to officers who acted in a manner where there was no clearly constitutional violation and they acted reasonably.  In <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, cert. denied 294 F.2d 1276 (11th Cir. 2002), the court determined that the officers, although using force to handcuff the plaintiff who had a bad arm screamed in pain when the officers ignored his plea and handcuffed him for a number of hours were not liable because the handcuffing was a relatively common and ordinarily accepted non-excessive force to detain an arrestee.  As in the present situation, Officer Straubel testified that he chose not to use the OC spray while she was in the car because of the other passengers, particularly the child (Exhibit "Z" - Deposition Testimony of Mark Straubel at page 49).  He also stated that spraying in a vehicle was not recommended in training (Exhibit "Z").  The officers are trained to use various levels of force in the use of force continuum (Exhibit "Z").  Officer Straubel testified that it is the officer's discretion as to whether you use pepper spray or lay your hands on them.

In determining the issue of qualified immunity, this Court must analyze a two-part test. Saucier v. Katz, 121 S. Ct. 2153 (2001).  First, the Court should determine whether the right to be free from the level of force used here was clearly established. Saucier v. Katz, 121 S. Ct 215 (2001).  In other words, the Court must determine whether it would have been clear to a reasonable officer in Straubel or Long's position that their conduct was unlawful in the situation they confronted.  Here, the officers were confronted with an angry, aggressive and clearly vocal individual in an unfamiliar car in a high crime area driving in an erratic manner and, although being the subject of a police investigation, used profanity, moved aggressively, and attempted to close the window of her car during a police investigation.  In this context, should the officers have reacted to her attempts by removing the keys and then the individual?  What drew the officers' attention  was the attempt to speed away from in front of a local market.  The officers were concerned with weapons and so put the spotlight on the car (Exhibit "D" – Deposition Testimony of Straubel at page 17).  Straubel believed not only weapons may be involved but this could have been a robbery (Exhibit "B" – Deposition Testimony of Straubel at pages 19 and 21).  While attempting to investigate and speak with Ms. Flores, she began to close the drivers side window and he saw "Ms Flores' hand go toward the side of the door often where automatic locks are located.  Fearing that I would be locked out of the car and she would have been able to barricade herself with the vehicle I opened the

door." (Exhibit "G" – Deposition Testimony of Straubel at page 42). The officer also stated that he felt had had to get her out of the vehicle "in case there was any weapons secreted in the car. It is common for people to carry box cutters, knives, weapons. I didn't want to afford her the opportunity to equip herself with any weapon that might have been in the vehicle." (Exhibit "P" – Deposition Testimony of Straubel at page 24). Officer Straubel immediately proned her and she was till fighting face down on the ground and attempted to handcuff her (Exhibit "R" – Deposition Testimony of Straubel at page 25). Officer Long, only after seeing the resisting, utilized his "OC spray" (Exhibit "AA" – Deposition Testimony of Straubel at page 26). Given the quick nature of the incident and the actions of Ms. Flores from her beginning language to her spitting and kicking the cage in the police car, there is no doubt that the force used, which resulted in minor injuries, was objectively reasonable and the officers are entitled to qualified immunity. Reasonable officers will certainly agree with this action. Additionally, it is reasonable that a person confronting police officers will obey orders and not kick, tug, pull and spit to keep the officers from neutralizing them. In particular, Ms. Flores, in her deposition, describes a good deal of police activity in this neighborhood and stops of even her own family. She, more than individuals not familiar with the area, should be aware of the heightened safety concerns yet acts in a combative and belligerent way because she is having a bad day. The officers' reactions to her behavior were reasonable.

Ms. Flores has offered no evidence to establish that she was not verbally abusive and exhibited signs that were considered dangerous activity by the officers. The testimony of Officer Straubel clearly supports the attempted minimum use of force.

Given the scenario of facts in this action, it is not clearly established that the officers' physical force to remove Ms. Flores from the car was excessive force. Therefore, in this regard, the officer satisfied the first prong of the test for qualified immunity. Even if the Court is to question the first prong, clearly the second prong of the test is satisfied because it is obvious from the facts that the use of force was administered in an objectively reasonable manner. Qualified immunity has been applied in an excessive force action to protect officers from a sometimes "hazy border between excessive and acceptable force." Saucier, citing Priester v. Rivera Beach, 208 F. 2d 919, 926-927 (CA 11200). Therefore, qualified immunity can apply in the event there is a mistaken belief the force was reasonable. In fact, Ms. Flores testified that even when she started the conversation with the officer at the car window with profanity, he simply continued to do his job without becoming affected by her attitude (Exhibit "F"). It was not until the actions of Ms. Flores presented more of a danger that the officer acted with any force. It was the actions of Ms. Flores that caused the officers to react. Their decision to remove her as a threat in the car can only be seen as reasonable. Additionally, the level of force utilized by the officers while she resisted was reasonable. Ms. Flores is unable to describe a

particular weapon that hurt her.  In fact, she states she did not see a gun, a flashlight or other police weapon being utilized.  The only certain fact is she was on the street that contained debris and was resisting handcuffs.

Given the nature of the stop, the location of the stop, and the immediate and subsequent acts of Ms. Flores, the amount of force utilized by the officers was reasonable and they should be immune from liability.

**E.     There Are No Facts To Support A Cause Of Action For Assault And Battery**

The Plaintiff's Second Count alleges the officers are liable for assault and battery under the Connecticut State Law.  A finding of assault and battery requires that there be some intentional, unlawful act on the part of the police officer.  An assault is any attempt, with the use of unlawful force or violence, to do physical harm to another person, coupled with the ability at that time to complete the act.  Russo v. Porga, 141 Conn. 706, 109 A.2d 585 (1955).  A battery is a completed assault. Assault and battery are classified as intentional torts and, therefore, must be committed intentionally or under circumstances showing a reckless disregard of the consequences.  A police officer who makes a valid investigatory stop or a legal arrest has the right to use as much force as he reasonably believes necessary for that purpose.  In the instant case, there is no evidence that the Defendants applied any force other than to detain and arrest the Plaintiff.  In fact, in accordance with the

testimony of the parties, any injury was during the attempt to handcuff.  Even the

hospital report indicates that the Plaintiff was "cut on an unknown object."  There is

no evidence to support an assault and battery.

**F.    Plaintiff Has No Facts To Support A Claim For Intentional Infliction Of Emotional Distress**

The Plaintiff's Complaint alleges that the Defendants' conduct constituted

intentional infliction of emotional distress.

In order to succeed on a claim of intentional infliction of emotional distress,

the Plaintiff must prove that the Defendants:  (1) intended to inflict emotional distress

or knew or should have known that emotional distress was a likely result of his/her

conduct;  (2) that the conduct was extreme and outrageous;  (3) that the conduct

was the cause of the Plaintiff's distress;  and (4) the emotional distress sustained by

the Plaintiff was severe.  Petyon v. Ellis, 200 Conn. 243, 253 (1986);  DeLaurentis v.

City of New Haven, 200 Conn. 225, 226-27 (1991).

The issue of whether the Defendant's conduct rises to the level of extreme

and outrageous behavior is a question of law to be decided by the Court.  In fact, the

standard in determining intentional infliction is extremely high.  "Liability has been

found only where the conduct has been outrageous in character and so extreme in

degree as to go beyond all possible bounds of decency, and to be regarded as

BMF04003                                        **19**

atrocious to utterly intolerable in a civilized community.  Restatement (Second) Torts 4, comment (d).

In the present action, the Plaintiff makes a bare allegation of emotional distress but, in response to discovery as to treatment, the Plaintiff does not include any treated for emotional distress.  In fact, the only treatment received by the Plaintiff was with and the Emergency Room and some physical exam thereafter. There is no indication of emotional distress.  Therefore, judgment should be entered as to this claim for the Defendants.

THE DEFENDANTS

BY: _____

Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street
Bridgeport, CT  06604
Tel. No. 576-7647
Juris No. 06192

## **CERTIFICATION**

This is to certify that a copy of the foregoing "Memorandum in Support of

Motion for Summary Judgment" has been mailed, postage prepaid, on this 3rd day of

February, 2004, to:

**E. Gregory Cerritelli, Esq.**
**7-9 Elm Street, Suite 2L**
**New Haven, CT  06510**

_____
Barbara Brazzel-Massaro
Commissioner of the Superior Court